UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAMUEL DAVIS, : | |
|     Plaintiff, : | |
| : | |
| v. : | Case No. 3:15-cv-461 (SRU) |
| : | |
| SCOTT ERFE, et al., : | |
|     Defendants. : | |

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Samuel Davis commenced this action by complaint filed on March 30, 2015. The remaining defendants are Warden Scott Erfe, Deputy Warden Viger, Counselor Supervisor Jennifer Peterson, Captain Johnson, and Correctional Counselor Schepp. Davis alleges that the defendants retaliated against him for filing grievances and exercising his right of access to the courts. The defendants have filed a motion for summary judgment. Doc. #18. For the reasons that follow, the defendants' motion is **granted**.

I.    Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970);

*see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to

support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

II.    Facts[1]

Davis first entered the custody of the Department of Correction in 1977. Since then, he has been discharged, readmitted to custody, and transferred among correctional facilities numerous times. During some of the readmissions and transfers, Davis would attend an inmate orientation, at which he would receive information on multiple topics including the Inmate Grievance Procedures set forth in Administrative Directive 9.6.

On February 19, 2014, Davis was transferred to Cheshire Correctional Institution. He attended inmate orientation on February 21, 2014, and received an inmate handbook. Davis has filed inmate grievances in the past, demonstrating his understanding of the grievance procedures.

On January 17, 2015, he filed an inmate grievance regarding cancellation of recreation. At that time, he was housed in North Block 6, where defendant Peterson was the unit manager. In February 2015, defendant Schepp became Davis' counselor. Both Peterson and Schepp are white-skinned females. Davis is a black-skinned male. About this same time, Davis applied for a prison job. Defendant Schepp told Davis that he could not apply for a job until he was disciplinary report free for one year. On February 6, 2015, Davis submitted an Inmate Request Form to defendant Peterson complaining that defendant Schepp had lied to him. He stated that he knew he could apply for a prison job as soon as he

---

[1] The facts are taken from the defendants' Local Rule 56(a) Statements and supporting exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement that contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3. Although the defendants informed Davis of this requirement, Doc. #18-16, he has not submitted a Local Rule 56(a)2 Statement. Accordingly, the defendants' facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

finished serving disciplinary sanctions. Davis also accused defendant Schepp of racism. The one-year waiting period to apply for a prison job is a policy of the Cheshire Correctional Institution. Davis had received a disciplinary report on November 12, 2014. Thus, under the facility policy, the earliest he would be eligible to be placed on the list for a prison job was November 13, 2015. About that same time, Davis asked defendant Schepp for a new mattress. Defendant Schepp did not give Davis a new mattress.

On February 6, 2015, Davis spoke to defendant Peterson in the hallway. He complained that defendant Schepp spoke to him "like it was 1930 when white women talk to black men like he a little boy." Doc. #18-15 at 3, ¶ 23. Davis based his characterization of defendant Schepp as a racist on the denial of the new mattress and other things. Defendant Peterson had spoken with defendant Schepp before her conversation with Davis and was aware of the situation.

While returning from the dining hall, Davis approached defendant Captain Johnson, an African-American supervisor. Davis addressed his issues to defendant Johnson because defendant Peterson did not want to listen to his complaints. At the time, Defendant Peterson was standing behind defendant Johnson, and told him to leave.

That same day, Davis submitted an Inmate Request Form to defendant Johnson complaining that defendant Johnson had permitted defendant Peterson to call him "boy" and to order him to stop speaking to Davis and leave the area. Doc. #18-15 at 4, ¶ 28. Later in the day, Davis submitted a second Inmate Request Form to defendant Johnson accusing him of being in love with a sixty-two-year-old woman. In his deposition, Davis identified the woman as defendant Peterson. Davis stated in the request form that he had informed defendant Deputy Warden Viger about an inappropriate relationship between defendants Peterson and Johnson.

On February 24, 2015, at approximately 12:30 p.m., defendant Schepp attempted to deliver legal

4

mail to Davis. Correctional Officer Barnes asked Davis to bring a pen from his cell to sign for the mail. Davis became disrespectful and demanded that defendant Schepp provide him with a pen. In response, defendant Schepp ordered Davis to enter his cell and lock up. Defendant Schepp left the housing unit for ten minutes and then returned to deliver Davis' legal mail to him. Davis signed for the mail and defendant Schepp opened the mail in his presence. The incident was recorded on the surveillance video. The following day, Davis submitted an Inmate Request Form complaining that defendant Schepp opened his legal mail outside his presence. Defendant Peterson reviewed the surveillance tape and determined that Davis' claim was false.

On February 27, 2015, Davis spoke with Commissioner Semple and Warden Erfe in the hallway while they were touring the housing unit. He told them that he had problems with defendants Johnson, Peterson and Schepp. Davis complained that his legal mail had been opened, he was passed over for library visits, he had problems with recreation and he never got a new mattress. Davis characterized those actions as retaliatory. He testified at his deposition that he did not file a grievance regarding those claims and that nothing had prevented him from doing so.

Davis continued to tell correctional officers and supervisors that defendants Peterson and Johnson were in a relationship and that defendant Peterson was a racist. He was attempting to turn staff against defendant Peterson.

On February 13, 2015, defendant Peterson had issued a bad work report to inmate King after she learned that inmate King was hoarding supplies in his cell. As a result of the bad report, inmate King lost his prison job. Davis knew inmate King and was aware that inmate King had lost his job. On February 28, 2015, defendant Peterson received a confidential letter from an inmate stating that, on February 14, 2015, Davis had collaborated with inmate King and other inmates to fabricate a claim that

they had witnessed defendant Peterson kissing and fondling Officer Torres on several occasions. The letter stated that the inmates were trying to get defendant Peterson and Officer Torres transferred out of the housing unit as payback for inmate King losing his job, and to get inmate King's job restored. When the letter was handed to defendant Peterson, Davis reportedly was continuing to search for inmates to help inmate King with his "scam." Based on the letter and Davis' prior actions in attempting to disrupt defendant Peterson's relationship with staff, defendants Peterson and Johnson determined that the plaintiff presented a safety and security concern in the housing unit.

Defendant Peterson reported those events to her supervisors. On March 2, 2015, defendant Deputy Warden Viger ordered that Davis and inmate King be sent to restrictive housing on Administrative Detention status pending an investigation. Upon arrival in restrictive housing, Davis was given a copy of the restrictive housing order. On March 11, 2015, defendant Warden Erfe ordered Davis transferred to Corrigan-Radgowski Correctional Center.

On March 23, 2015, Davis wrote a letter to Deputy Commissioner Rinaldi stating that he was sent to Corrigan-Radgowski Correctional Center because he complained about defendant Peterson for calling him "boy" on February 6, 2015, about Officer Torres for telling other inmates that inmate King was a "rat," told defendant Viger about other staff, and complained about defendant Schepp for opening his legal mail on February 24, 2015. At his deposition, however, Davis denied the assertions he made to Deputy Commissioner Rinaldi. Instead, Davis claimed that he was transferred because he complained about defendant Peterson not doing her job, making excuses for counselors, and not ensuring he received recreation and library time. He also stated that he complained to defendant Viger about the "love affair" between defendants Peterson and Johnson and also told defendant Viger that "they" had put up a little memo calling inmate King a rat. Davis also attributed his transfer to his complaints that

defendant Schepp opened his mail, that defendant Torres came to work at 7:00 a.m. and immediately turned the television volume up, and that officers were waking inmates up when they came into the block to use the officers' microwave. Davis stated that he filed a grievance claiming that he was transferred in retaliation for filing grievances, but did not receive a response. He did not appeal the non-response. Department of Correction records do not show that Davis filed such a grievance regarding his transfer while he was at Cheshire Correctional Institution or when he arrived at Corrigan-Radgowski Correctional Center.

Davis testified that he did not file a grievance regarding Administrative Detention placement at Cheshire Correctional Institution because he could not get a grievance form while on Administrative Detention status. Davis was transferred to Corrigan-Radgowski Correctional Center nine days after his placement. He concedes that after he arrived at Corrigan-Radgowski Correctional Center, he did not file a grievance regarding the Administrative Detention placement and that nothing prevented him from doing so. About a week after commencing this lawsuit, Davis filed a grievance seeking the reason for his placement on Administrative Detention status.

In his complaint, Davis attributes the placement to retaliation for filing written complaints and grievances, specifically the February 6, 2015 letter to defendant Viger about the alleged inappropriate relationship between defendants Peterson and Johnson.

III.     Discussion

In his complaint, Davis asserts a claim for supervisory liability against Warden Erfe and Deputy Warden Viger; a First Amendment retaliation claim against defendants Warden Erfe, Deputy Warden Viger, Unit Manager Peterson, and Captain Johnson for placing him in segregation and transferring him to another correctional facility with less programming and fewer job opportunities; and a First

7

Amendment retaliation claim and a Fourth Amendment unreasonable search claim against defendant Schepp for opening his legal mail outside his presence. The defendants move for summary judgment on three grounds: (1) Davis' claims against the defendants in their official capacities and all claims for equitable relief are barred by the Eleventh Amendment; (2) Davis failed to exhaust his administrative remedies before commencing this action; and (3) Davis fails to present any evidence of a constitutional violation.

### A. Claims in Official Capacity and for Equitable Relief

Davis names all defendants in their individual and official capacities. He does not specify the capacity in which he requests compensatory and punitive damages. The Eleventh Amendment divests the district court of subject matter jurisdiction over any claims for monetary damages against a state official acting in his official capacity unless the state has waived that immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not abrogate state sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 341–45 (1979). Nor has Davis presented evidence showing that Connecticut has waived its immunity. Thus, all claims for damages against the defendants in their official capacities are barred by the Eleventh Amendment. The defendants' motion for summary judgment is **granted** with respect to all claims for damages in the defendants' official capacity.

Davis also seeks declaratory relief in the form of a declaration that the defendants' past actions violated his constitutional rights. Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American Institute of Certified Public Accountants*, 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable

parties to adjudicate claims before either side suffers great damages. *See In re Combustible Equip. Assoc.*, 838 F.2d 35, 37 (2d Cir. 1988). The complaint concerns only past actions. Davis has not identified any legal relationships or issues that require resolution via declaratory relief. The defendants' motion for summary judgment is thus **granted** with respect to the request for declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119–20 (2d Cir. 2000) (holding that Eleventh Amendment bars declaration that State of Connecticut violated federal law in the past); *Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (concluding that claim for declaratory relief that is duplicative of adjudicative claim underlying action serves no purpose).

Finally, in the introduction to the complaint, Davis references unspecified injunctive relief, but he fails to seek an injunction in the prayer for relief. The Supreme Court has long held that the Eleventh Amendment does not bar claims for prospective injunctive relief against state officials in their official capacities. *See Verizon Maryland Inc. v. Public Serv. Com'n of Maryland*, 535 U.S. 635, 645 (2004) (citing *Ex parte Young*, 209 U.S. 123 (1908)). That exception to Eleventh Amendment immunity does not extend to requests for injunctive relief relating to past constitutional violations. *See Morgan v. Dzurenda*, No. 3:14cv966(VAB), 2015 WL 5733723, at *9 (D. Conn. Sept. 29, 2015). Because Davis has not identified any specific injunctive relief and, therefore, has not demonstrated that an injunction is required to remedy a future constitutional violation against him by the defendants, any possible request for injunctive relief is barred by the Eleventh Amendment. The defendants' motion for summary judgment is **granted** with respect to any request for injunctive relief.

B.  Exhaustion of Administrative Remedies

The defendants next argue that Davis failed to exhaust his administrative remedies before commencing this action.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), imposes a requirement that inmates exhaust their administrative remedies before filing an action in federal court concerning any aspect of prison life. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Section 1997e requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Marcias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95. In addition, the inmate must exhaust his administrative remedies for each claim he asserts in federal court. *See Baldwin v. Arnone*, 2013 WL 628660, at *5 (D. Conn. Feb. 18, 2013).

An inmate may be excused from the exhaustion requirement "only where (1) administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances . . . justify the prisoner's failure to comply with the administrative procedural requirements.'" *Adekoya v. Federal Bureau of Prisons*, 375 F. App'x 119, 121 (2d Cir. 2010) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The courts have found special circumstances only where the failure to exhaust administrative remedies was caused by a reasonable but erroneous interpretation of prison regulations. *Bennett v. James*, 737 F. Supp. 2d 219, 227 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 816 (2d Cir. 2011).

The Department of Correction grievance procedures are set forth in Administrative Directive 9.6. *See* Defs.' Mem. Ex. K, Doc. #18-13. The procedures require an inmate first to seek informal resolution of the issue in writing using an Inmate Request Form. The appropriate correctional official then has

fifteen days to respond to the Inmate Request. If the inmate is not satisfied with the response, the inmate may file a grievance, to which he must attach the Inmate Request Form containing the response. The inmate must file the grievance within thirty days of the date of the cause of the grievance. The Unit Administrator has thirty days to respond to the grievance. If the inmate is not satisfied with the response, or no response is provided within the thirty days, the inmate may file a grievance appeal.

Davis was aware of the grievance procedures. Prior to filing this lawsuit, he attended inmate orientation at Cheshire Correctional Institution. Defs.' Mem. Ex. A, Tr. of Davis Deposition, Doc. #18-2 at 18–19. Davis acknowledged that he understood the administrative remedy, or grievance, procedures. *Id.* at 19. Davis also received an Inmate Handbook that explained the inmate grievance procedures, and stated at his deposition that he had previously utilized the inmate grievance procedures. *Id.*

        1.      Exhaustion of the Unreasonable Search Claim

Davis' Fourth Amendment claim against defendant Schepp is based on his allegation that, on February 24, 2015, she opened his legal mail outside his presence. He characterizes her action as an unreasonable search. The following day, Davis submitted an Inmate Request Form to defendant Peterson stating that defendant Schepp had opened his legal mail outside his presence. Doc. #18-2 at 103 (Davis Dep. Tr. Ex. 8). He asked her to report the incident. Davis stated in his deposition that defendant Peterson told him that she had submitted a report and that he was satisfied with that result. *Id.* at 46–49. He did not file a grievance over this incident. *Id.* at 46.

If Davis was not satisfied with the response to his Inmate Request, he was required to pursue the matter by filing a grievance. Because he concedes that he did not do so, the claim is unexhausted.

        2.      Retaliation Claims

In his complaint, Davis identifies three retaliatory actions: (1) his placement in restrictive

11

housing; (2) his transfer; and (3) the improper reading of his legal mail. The defendants contend that Davis has not exhausted his administrative remedies with regard to any of those claims. Davis states that he was unable to obtain administrative remedy forms while in restrictive housing.

During his deposition, Davis conceded that he did not file a grievance regarding his placement in restrictive housing after he arrived at Corrigan-Radgowski Correctional Center. Davis was required to file a grievance within thirty days of his restrictive housing placement. He was transferred to Corrigan-Radgowski Correctional Center nine days after his placement. Thus, even crediting the lack of access to administrative remedy forms for the nine days Davis was confined in restrictive housing, he still had ample time to file his grievance. In order to file a grievance, Davis was first required to submit an Inmate Request Form to which staff would then have fifteen days to respond. Accordingly, allowing for the response period to run within the thirty-day grievance period, Davis had six days to file an Inmate Request Form after his transfer. Davis conceded that nothing prevented him from filing a grievance regarding his restrictive housing placement, and that he did not do so. Doc. #18-2 at 66–67. Thus, Davis has not exhausted his administrative remedies on the restrictive housing claim.

Davis testified that he filed a grievance claiming that he was transferred in retaliation for filing grievances, but did not receive a response. *Id.* at 63. The defendants have submitted copies of the grievance log from Corrigan-Radgowski Correctional Center. The log discloses no such grievance. *See* Defs.' Mem. Ex.J, Doc. #18-12, Aff. of Michelle King, ¶¶ 4–5 and attached log. Even crediting Davis' statement, he has not satisfied the exhaustion requirement. To have exhausted his administrative remedies, Davis was required to do more than file an initial grievance. He was required to appeal the non-response to the next level. *See Woodford*, 548 U.S. at 90 (exhaustion requires inmate to comply with all administrative deadlines and procedures). Davis stated, however, that he did not appeal the non-

response. Doc. #18-2 at 63.

In April 2015, about a week after he filed this action, Davis filed a grievance and subsequent appeal seeking the reason for his transfer. Because the grievance was filed after the complaint, it does not satisfy the exhaustion requirement. Davis was required to fully exhaust his administrative remedies before he filed the complaint. *See Lopez v. Cipolini*, ___ F.3d ___, 2015 WL 5732076, at *6 (S.D.N.Y. Sept. 30, 2015) (requiring dismissal of suit when prisoner did not properly exhaust administrative remedies before filing suit) (collecting cases). Because Davis did not file his grievance until after he filed this case, he has not exhausted his administrative remedies with regard to his claim of retaliatory transfer.

Finally, Davis alleged that defendant Schepp opened his legal mail outside his presence in retaliation for his complaints. Davis testified at his deposition that he did not file a grievance regarding the following retaliatory actions: opening his legal mail, being passed over for library visits, problems with recreation, and denial of a new mattress. He also testified that nothing prevented him from filing grievances regarding those actions. Doc. #18-2 at 50–53. Thus, by his own admission, Davis has not exhausted his administrative remedies with regard to any claim of retaliation.

Davis did not exhaust his administrative remedies on any of his retaliation claims and conceded during his deposition that nothing prevented him from doing so. The defendants' motion for summary judgment is **granted** with respect to all retaliation claims for failure to exhaust administrative remedies before commencing a section 1983 action.

C.   Unreasonable Search Claim

The defendants contend that, even if Davis exhausted his claim that defendant Schepp unreasonably searched his legal mail by opening and reading it outside his presence, the claim lacks

merit.

Although a prisoner has a right to be present when his legal mail is opened, *Wolff v. McDonnell*, 418 U.S. 539, 574–76 (1974), an isolated incident of mail tampering is usually insufficient to establish a constitutional violation. *See Washington v. James*, 782 F.3d 1134, 1139 (2d Cir. 1986). To state an actionable claim, the inmate must show that correctional officials "regularly and unjustifiably interfered with incoming legal mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted); *see also Guillory v. Haywood*, 2015 WL 268933, at *23 (N.D.N.Y. Jan. 21, 2015) (affirming and adopting recommended ruling dismissing First Amendment claim for isolated incident of improper opening of legal mail).

The defendants also contend that the claim lacks a factual basis. In support of their motion for summary judgment, the defendants have filed a copy of the video surveillance tape of the housing unit on February 24, 2015. *See* Defs.' Mem. Ex. F-1. The video recording shows defendant Schepp with Davis' legal mail in the housing unit. She leaves at 12:37 p.m. before giving him his mail. She then returns, opens Davis' legal mail in his presence, and hands him the letter at 12:52 p.m. In opposition to the motion for summary judgment, Davis has submitted his own affidavit recounting a different version of the events. He provides no objective evidence contesting the accuracy or authenticity of the video recording, however, and has not alleged that he received more than one legal letter that day. *See Mason v. Rich*, 2011 WL 4345025, at *3 (D. Conn. Sept. 15, 2011) (conclusory restatement of allegations from complaint in affidavit is insufficient to oppose motion for summary judgment); *Zembko v. Northwestern Mut. Life Ins. Co.*, 2007 WL 948323, at *4 n.1 (D. Conn. Mar. 26, 2007) ("a nonmovant's 'self-serving conclusory statements' that dispute the movant's evidence cannot create material issues of fact to avoid summary judgment"). In light of the clear evidence on the video recording, I conclude there is no

14

genuine issue of material fact regarding distribution of Davis' legal mail on February 24, 2015, and that the defendants are entitled to summary judgment on the merits for the claim regarding opening legal mail.

IV.     Conclusion

The defendants' motion for summary judgment **[Doc. #18]** is **GRANTED.** The Clerk is directed to enter judgment and close this case. Davis' motion for a restraining order **[Doc. #26]** is **DENIED** without prejudice to refiling in a separate case because it is based on allegations unrelated to the claims asserted in the complaint. *See Allen v. Brown*, 1998 WL 214418, at *4 (N.D.N.Y. Apr. 28, 1998).

**SO ORDERED.**

Signed this 19th day of September 2016 at Bridgeport, Connecticut.

        /s/ Stefan R. Underhill
        Stefan R. Underhill
        United States District Judge